AO 91 (Rev. 11/11) Criminal Complaint

FILED
APR 1 8 2019
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

# UNITED STATES DISTRICT COURT
for the
Eastern District of North Carolina

| | |
|---|---|
| United States of America<br>v.<br>Daniel Kemp<br><br>*Defendant(s)* | )<br>)<br>) Case No. 5:19-mj-1465-JG<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **unknown through April 19, 2017** in the county of **Harnett** in the **Eastern** District of **North Carolina**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2241(a) | Aggravated Sexual Abuse by Force or Threat |
| 18 U.S.C. § 2244(a)(1) | Abusive Sexual Contact by Use of Force |
| 18 U.S.C. § 2244(b) | Abusive Sexual Contact without Permission |

This criminal complaint is based on these facts:

Beginning at a date unknown and continuing until on or about April 19, 2017, Daniel Kemp engaged in sexual abuse by force or threat and sexual contact by force and coercion, and without the permission of, both minor and adult victims, who resided with him at the Fort Bragg Military Installation within Harnett County, NC.

☐ Continued on the attached sheet.

*Complainant's signature*

Jessica Smeltz, FBI Special Agent
*Printed name and title*

On this day, **JESSICA SMELTZ** appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this Complaint.

Date: **18 April 2019**

City and state: **Raleigh, North Carolina**

*Judge's signature*

United States Magistrate Judge James E. Gates
*Printed name and title*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

## PROBABLE CAUSE AFFIDAVIT

I, Special Agent Jessica Smeltz (Affiant), having been duly sworn according to law, depose and state that:

## INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI) assigned to the Fayetteville Resident Agency of the Charlotte, North Carolina Division, and have been employed by the FBI since March of 2017. I am assigned to the Violent Crimes against Children Unit where I am responsible for investigations involving the sexual exploitation of children.

2. I have participated in numerous child exploitation investigations. I have received training in the area of child sexual exploitation as well as specialized instruction on how to conduct investigations of child sexual exploitation through the FBI.

3. As a result of my training and experience, I am familiar with federal criminal laws and know that it is a crime to knowingly engage in and attempt to engage in a sexual act and cause and attempt to cause a sexual act, as defined in 18 U.S.C. § 2246(2), with a person by using force against force against that person, in violation of 18 U.S.C. § 2241(a); to knowingly engage and attempt to engage in sexual contact and cause and attempt to cause sexual contact, as defined in 18 U.S.C. § 2246(3), with a person by using force against that person, in violation of 18 U.S.C. § 2244(a)(1); and to knowingly engage and attempt to engage in sexual contact and cause and attempt to cause sexual contact, as defined in 18 U.S.C. § 2246(3), with a person without that person's permission, in violation of 18 U.S.C. § 2244(b)

4. Information contained within this affidavit is based upon information from my investigation, personal observations, training and experience, and information relayed to me by other law enforcement officers and or agents.

5. Because this affidavit is being submitted for the limited purpose of securing authorization for the requested arrest warrant, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are necessary to establish the necessary foundation for the requested warrant.

## PROBABLE CAUSE

6. Mr. Daniel N. Kemp (KEMP) is an active duty member of the United States Army. He has been on active duty since approximately August 28, 1991. On or about December 13, 2000, Mr. Kemp and his wife, Shanynn Kemp (Mrs. Kemp), adopted six children while Mr. Kemp was stationed at Fort Drum in New York. Mr. Kemp was then stationed at multiple duty stations in the Army whereby his wife and adopted children followed him. On or about June 29,

2016, Mr. Kemp was stationed at Fort Bragg in North Carolina, and he moved his family to a residence located at 3 Bloom Road, Cameron, North Carolina, 28310, which property is located on concurrent federal jurisdiction.

7. On April 19, 2017, Victim 1, then 18 years old and a senior at Overhills High School in Spring Lake, North Carolina, disclosed to her teacher, guidance counselor, a social worker, and the United States Army Criminal Investigations Command ("CID") agent that she was being sexually abused by KEMP. She stated KEMP first sexually abused her around 2013-2014, while residing in Fort Sill, Oklahoma. She stated the abuse continued while living in Cameron, North Carolina. She disclosed being physically abused by KEMP and showed her teacher photos of the physical abuse on her Nintendo DS. She also disclosed that KEMP forced her to watch pornographic videos on his computer.

8. After speaking with law enforcement at school, Victim 1 was dropped off at her residence. Prior to Victim 1 arriving home, Child Protective Services[1] and Adult Protective Services[2] went to the residence to interview the other three siblings who lived in the home while Mrs. Kemp was present. The other siblings denied being sexually abused.

9. The following day, a social worker, called Mrs. Kemp to arrange forensic interviews of the other three siblings. Mrs. Kemp stated she refused to cooperate with the investigation, would not allow her children to be interviewed, and that she had left the state with her children and they were in Alabama. Mrs. Kemp stated she was outside of their "jurisdiction" and nothing could be done. Mrs. Kemp hung up on the social worker. Shortly after the call to the social worker, Mrs. Kemp called an agent at the Fort Bragg CID office and refused to say where she was taking her children. She stated that Victim 1 lied about the abuse. Within minutes of that call, Victim 1 called CID and recanted her disclosure. The phone call from Victim 1 was made from Mrs. Kemp's cell phone.

10. Approximately one week later, the Harnett County North Carolina School District received a request for school records pertaining to the minor sibling (Victim 2). The social worker in North Carolina was able to again speak with Mrs. Kemp who advised she was not allowing Victim 1 to attend a new high school although she was approximately five weeks away from graduating. Mrs. Kemp hung up the phone on the social worker during the call.

11. On May 7, 2017, CID located and interviewed KEMP's second oldest child, Victim 3. Victim 3 was unaware of the investigation and reported being somewhat alienated from the family. Victim 3 moved out of the house while the family was living in Clarksville, Tennessee. Victim 3 stated that KEMP called her the night before and offered to give her his GI Bill benefits, but did not mention being under investigation or that Mrs. Kemp had left North Carolina with her siblings. Victim 3 disclosed that KEMP started sexually abusing her around the age of 12 or 13 years while the family resided in Clarksville, Tennessee. Victim 3 said she was forced to perform oral sex on KEMP and that it happened so many times she was unable to quantify how many times she was abused. Victim 3 was under the belief that at the time the abuse began, she was the only victim. Victim 3 reported that when she was

---

[1] One of the four children was minor at the time.
[2] One of the other children is a mentally disabled adult.

approximately 17 years old, KEMP attempted to penetrate her vagina with his penis in her bedroom. Victim 3 fought KEMP off and told him "no" and "stop," which he did. Victim 3 stated that due to her room being located next to her sibling's rooms, she felt he stopped because KEMP was worried someone would hear what was going on. Victim 3 stated this was the last time she was abused by KEMP.

12. Shortly after KEMP stopped abusing Victim 3, she observed him in the basement garage of the Clarksville residence with Victim 4, the mentally disabled sibling. Victim 3 witnessed KEMP positioned in front of Victim 4, and it appeared as though Victim 4 was performing oral sex on KEMP, although Victim 3 could not clearly see what was going on. Once KEMP realized Victim 3 was in the garage, he quickly exited. Victim 4 told Victim 3 that KEMP was forcing her to perform oral sex on him.

13. On May 10, 2017, CID agents executed an Army search authorization issued by a Military Magistrate at the Kemp residence located at 3 Bloom Road, Cameron, North Carolina 28310, for the seizure of electronic devices and the seizure and search of evidence pertaining to sexual assault. Upon conducting the search, CID agents located a desktop computer monitor and keyboard; however, the actual computer tower had been removed and was not located inside the house. CID agents located and seized other electronic devices inside of the residence.

14. On May 11, 2017, CID agents conducted surveillance at 4919 Saddlehorn Drive, Arlington, Texas 76017. This was the address provided to the high school in North Carolina from which Victim 2 had transferred. CID determined this address was the residence of Mrs. Kemp's parents. While conducting surveillance, CID agents saw Victim 1, her other adult sister then living with the family (Victim 5), and Mrs. Kemp's parents exit the house and go to a nearby church. One of the CID agents entered the church and approached Victim 1 and identified himself at which time Victim 1 became visibly emotional with tears. Victim 1 stated words to the effect of, "I thought you guys would never find me, I am so scared." Victim 1 stated her mother forced her to recant what she said. Victim 1 stated everything she reported to law enforcement was true. Victim 1 said her mother told her that if she continued to tell people KEMP raped her that he would either commit suicide or go to prison which meant they would not have any healthcare or money. Mrs. Kemp told Victim 1 that if she did not have healthcare, then she would not be able to get her necessary medication that allows her to live. The CID agent asked if they could meet with Victim 1 later on and Victim 1 stated she was not allowed to leave the house unaccompanied.

15. Later on May 11, 2017, CID agents and detectives from the Arlington Police Department Crimes Against Children Unit went to the residence at 4919 Saddlehorn Drive, Arlington, Texas 76017. The agents entered the house and Victim 1 agreed to go with the agents. In front of Victim 5 and Victim 2, Mrs. Kemp's father stated aloud that Victim 1 was going to be put in a prison cell. The CID agents corrected the statement and explained that was not true. One of the CID agents conducted an interview of Victim 1 prior to her placement in a women's shelter.

16. Victim 1 again provided an account of the sexual abuse she endured by KEMP. She stated that KEMP raped her twice while living in Fort Sill, Oklahoma. On both occasions, she was in the garage and KEMP penetrated her vagina with his penis while holding her down on a van seat. The second time, he also penetrated her vagina with his fingers. On other occasions, KEMP forced her to perform oral sex on him while in the garage. While living in Cameron, North Carolina, KEMP forced her to perform oral sex on him while in the kitchen. KEMP also touched her breast over and under her clothing, sucked her breast under her clothing, touched her buttocks, and made her squeeze his penis over and under his clothing. Victim 1 did not consent to these acts.

17. Victim 1 also reported the following regarding her siblings. While living in Cameron, North Carolina, Victim 2 told her that KEMP forced him to perform oral sex on him. She witnessed KEMP lying in bed with Victim 5 and kissing her and touching her breast. She saw a used condom in Victim 5's trashcan, but wasn't sure if it was from KEMP and Victim 5. She witnessed KEMP having sex with Victim 4 on the floor of their bedroom, but could not remember if it was in Oklahoma or North Carolina.

18. Victim 1 confirmed that on numerous occasions while in the house in Cameron, North Carolina, KEMP forced her to watch pornography on his desktop computer on the websites Tumblr and Redtube[3]. She described the content as young girls under the age of 18 engaged in sexual acts with adult men.

19. Victim 1 stated when CID dropped her off at her residence after her initial disclosure, Mrs. Kemp had already packed up the van for them to flee the state. Victim 1 stated Mrs. Kemp did not say where they were going. Victim 1 stated Mrs. Kemp removed several digital devices to include the desktop tower and brought them with the family to Texas.

20. On May 12, 2017, a Texas state search warrant was issued to search and seize the digital devices inside 4919 Saddlehorn Drive, Arlington, Texas 76017. Army CID also sought a search warrant to take DNA swabs from multiple locations in the Cameron, North Carolina house and to swab the van seat that was then located in Texas at a storage unit. Both were approved, and the swabs were taken. The children and KEMP were also swabbed and all evidence was sent to USACIL (United States Army Criminal Investigation Lab). A report was generated stating the following. The condom located in Victim 5's Cameron, NC bedroom had a DNA mixture of V5 and KEMP. A swab from the floor of Victim 5's Cameron, NC bedroom revealed a semen profile that matches KEMP and non-semen DNA profiles matching KEMP and V5. The mattress bottom from Victim 4's Cameron, NC bedroom, revealed a semen DNA profile matching KEMP and non-semen DNA profiles matching Victim 4, Victim 2, and KEMP. Swabs from the van seat that was removed from the family vehicle showed a semen DNA profile matching KEMP and non-semen DNA profiles matching from Victim 4, Victim 5, and KEMP.

21. On September 13, 2017, Victim 6 (in custody at the Morgan County, Tennessee Correctional Facility on a theft conviction) disclosed that KEMP physically and mentally abused him beginning shortly after he was adopted. Victim 6 denied knowledge of the children

---

[3] Forensic analysis has corroborated the use of these two sites on the desktop computer.

being sexually abused. He stated KEMP did make him watch a pornographic video depicting a threesome. During a subsequent interview of Victim 6, he admitted that he was not initially forthcoming because he needed money for commissary and his family provided him with the assistance. Victim 6 then disclosed that KEMP forced him and Victim 3 to perform sexual acts upon each other multiple times while he watched and that Victim 4 told him KEMP forced her to perform oral sex on him.

22. On January 30, 2018, both Victim 2 and Victim 4 were interviewed by a child forensic interviewer. Victim 2 admitted that KEMP forced him to perform oral sex on KEMP in the garage while residing in Clarksville, Tennessee. Victim 4 denied being sexually abused and when confronted with the DNA evidence became very emotional and stopped the interview.

23. On January 29, 2019, a follow-up interview of Victim 1 was conducted by FBI SA Smeltz. Victim 1 provided the following additional information. Victim 1 specifically recalled KEMP forcing her to watch one video that depicted a 13 year old girl pretending to be a school girl with her dad. While living in Oklahoma and Cameron, North Carolina, KEMP frequently asked Victim 1 for sexually explicit images of herself. KEMP wanted her to use his cell phone to take the images. KEMP specifically asked for photos of her breast and vagina which he called her "little pussy." KEMP also requested that Victim 1 take videos playing with herself and of her kissing her sister. KEMP requested Victim 1 and Victim 5 to engage in sexual acts. On many occasions, Mrs. Kemp told the children to kiss their dad on the lips and she took photographs of them.

24. Victim 1 described a time in the kitchen at the house in Cameron, North Carolina where KEMP pushed her up against the wall with his hand and held her there. She could not move. KEMP touched her breast over and under her shirt, buttocks, and strangled her. She told him to get off and KEMP threatened that if she screamed, he would beat her. Also while living in Cameron, North Carolina, KEMP forced Victim 1 to squeeze his genitals. On one occasion, she was looking at his desktop computer in the den and KEMP grabbed her wrist and pulled her hand down to his genitals. Victim 1 saw his penis and testicles. There were other times when KEMP pulled his penis out and tried to force her hand on it. She would say "no." She recalled one day in the den when KEMP had sweatpants on and he pulled them down and forced her hand to touch his penis. Victim 1 pulled away and KEMP tighten his grip. This occurred three or more times while in North Carolina.

25. Victim 1 recalled the one time KEMP forced her to perform oral sex on him while in the house in Cameron, North Carolina. She was in the kitchen using the microwave, and she was on her knees because the microwave was lower than the kitchen counter. KEMP walked in and forced Victim 1's head forward and made her perform oral sex on him.

26. KEMP told Victim 1 that he wanted to have anal sex with her and that butt plugs would help stretch out her buttocks. KEMP showed her pictures of butt plugs on his desktop computer. He showed her a pink one and other ones with rhinestones. Victim 1 believes they were living in Oklahoma when this occurred.

## CONCLUSION

27.     Based the foregoing investigation, this Affiant has probable cause to believe that the suspect, KEMP, did commit violations of federal law, including 18 U.S.C. §§ 2241(a), 2244(a)(1), and § 2244(b). I respectfully request that a criminal complaint be issued for KEMP's arrest.

*Jessica Smeltz*
Jessica Smeltz
Special Agent
Federal Bureau of Investigation

On this 18 day of April, 2019, Jessica Smeltz appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this Affidavit.

JAMES E. GATES
UNITED STATES MAGISTRATE JUDGE