IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CR-00149-BO(2)

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | RESPONSE IN OPPOSITION |
| v. | : | TO MOTION FOR PROTECTIVE ORDER |
| | : | |
| DANIEL N. KEMP, SR. | : | |

NOW COMES Daniel N. Kemp, Sr., by and through the undersigned counsel, and files his response to the government's motion for a protective order, filed herein on May 30, 2019 (D.E. 41), and in opposition to a portion of paragraph 2(c) of the motion, shows unto the Court the following:

1. By its motion for a protective order, the government seeks, among other things, to prohibit Mr. Kemp from possessing or retaining copies of discovery materials to be produced by the government in this matter. *Motion* at 2, paragraph 2(c).

2. Prior to the filing of its motion, the government provided a copy of the same to counsel for Mr. Kemp for review. On or about May 30, 2019, the undersigned counsel advised the government that it opposed the motion, not in its entirety, but only to the extent that it sought to prohibit the possession or retention of discovery materials by Mr. Kemp. Counsel requested the government's agreement, as provided in the motion, to permit Mr. Kemp to possess/retain a copy of the discovery materials.

The government refused this request.[1]

---

[1] As counsel has previously advised the government, and now advises the Court, Mr. Kemp does not oppose the government's request for a protective order as to the matters set forth in paragraph 1, paragraphs 2(a) and (b) and paragraph 3 of the motion, or as to that portion of paragraph 2(c) that would prohibit the possession or retention of discovery materials by <u>non-expert witnesses</u>. *Motion* at 1-2.

3. In support of its request, the government alleges that a protective order is necessary in light of (1) the nature of the crimes charged and (2) the existence of "voluminous discoverable documents" that contain some un-described type of "confidential and identifying information for both third parties and alleged victims," which the government alleges would, for some un-described reason, be "extremely difficult" to redact from the discovery in this case. *Motion* at 2.

4. What the government additionally fails to explain to the Court is that the investigation in this case began over two (2) years ago, in April 2017, while Mr. Kemp was serving in the U.S. Army, 1st Theater Sustainment Command, at Ft. Bragg, N.C., and that allegations of the sexual abuse have already been the subject of an Article 32 preliminary hearing against Mr. Kemp under the U.S. Uniform Code of Military Justice (10 U.S.C. § 832).[2]

Upon information and belief, the discovery materials underlying the government's present motion, and the "extremely personal disclosures and evidence of physical and sexual abuse against multiple [alleged] victims," *Motion* at 2, were and have already been provided or disclosed to Mr. Kemp, and to his attorneys in connection with the Article 32 hearing, in the form of documents and testimony, without limitation or any type of protective order.

While the government seems to be concerned that Mr. Kemp may be able to discern the alleged victim's identities or potential witnesses from their description of the incidents, and equally concerned about how "extremely difficult" it would be for it to redact personal details and identifying information from the discovery in this case, *Motion* at 2, the fact is that Mr. Kemp is already aware of their identities from the Article 32 hearing, as well as from the fact that the allegations are from some of Mr. Kemp's own children, whom he obviously knows and can already readily identify.

---

[2] The indictment against Mr. Kemp only charges three offenses, all of which involve the same victim during the same time period from July 1, 2016 and April 19, 2017 (D.E. 22).

Under these circumstances, it is difficult to imagine any harm from the re-disclosure of materials or information that have previously been provided or disclosed to Mr. Kemp in a prior legal proceeding in which the government did not seek the "protections" it now claims are necessary and the only means available to "ensure the privacy, safety and welfare both of third parties and the alleged victims." *Motion* at 2-3.

Other than a generalized statement about the need to safeguard individuals alleged to have been victims of "crimes of this nature," and an indistinct, partial reference to "The Crime Victims' Rights Act," the government has failed to provide the Court with any cause for the restrictions it seeks under the circumstances involved in this particular case, against this particular defendant.

5. Mr. Kemp has also been detained in this matter and is presently being held at Piedmont Regional Jail in Farmville, Virginia (D.E. 35-Detention Order). He has no ability to impact the safety or welfare of the alleged victims or any third party witnesses, and there have been no allegations that Mr. Kemp has, at any time in the past 2 years, attempted to harm or influence the alleged victims or third party witnesses, even when his liberty status was not so significantly curtailed, and even though he has been aware of their identities and the substance of their allegations for months, if not years.

6. Moreover, Mr. Kemp's ability to review the discovery materials outside the presence of his counsel is fundamental to his 6th Amendment right to be informed of the nature and cause of the charges and to the effective assistance of counsel. The undersigned counsel does not have the time or ability to "baby-sit" Mr. Kemp's review of what the government admits are "voluminous" materials. Mr. Kemp, on the other hand, literally has nothing but time to spend with these materials, to better assist counsel in his review of the "voluminous" materials and in the development and presentation of his defense.

Mr. Kemp's constitutional rights will be violated if his access to and ability to review discovery materials is restricted in the unnecessary, and unjustified, manner requested by the government.

Finally, as a practical matter, counsel would not be allowed by Piedmont Regional Jail, or any other county jail within this district for that matter, to sit with Mr. Kemp and to tie up limited meeting space for hours on end to review these "voluminous materials." Jail visits, even legal ones, are subject to numerous restrictions, including feeding schedules, lock-downs and shift changes, and are only permitted during certain hours of the day. The only other option would be for counsel to make repeated trips to Piedmont Regional Jail, a 5-hour round-trip from Raleigh, to review these "voluminous materials" with Mr. Kemp over shorter, but more frequent, intervals of time. This option is as equally impractical and unnecessary.

WHEREFORE, for the reasons set forth above, Mr. Kemp respectfully submits the government has failed to show good cause for its request to restrict Mr. Kemp's access to the discovery materials in this matter, as required under Rule 16(d)(1), Fed. R. Crim. Pro., and requests the Court deny that portion of the government's motion which seeks to prohibit Mr. Kemp's possession or retention of copies of the discovery materials.

Respectfully submitted, this the 4th day of June, 2019.

SCOTT L. WILKINSON & ASSOCIATES, P.C.

/s/ Scott L. Wilkinson
N.C. State Bar No. 14431
CJA Appointed Counsel for Daniel N. Kemp
2802 Anderson Drive, Suite 101
Raleigh, NC 27608-1506
Telephone: (919) 614-4944

CERTIFICATE OF SERVICE

I hereby certify that I have, on this the 4th day of June, 2019, electronically filed the foregoing Response in Opposition to Motion For Protective Order with the Clerk of Court using CM/ECF system which will send notification of the same to the United States, as follows:

    Melissa B. Kessler
    Assistant United States Attorney

                                                      /s/ Scott L. Wilkinson
                                                      CJA Appointed Counsel for Daniel N. Kemp