IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CR-00149-BO-2

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | **SENTENCING MEMORANDUM** |
| | : | (VARIANCE OR DEPARTURE) |
| DANIEL N. KEMP, SR. | : | |

NOW COMES Daniel N. Kemp, Sr., by and through the undersigned counsel, and files his Sentencing Memorandum in this matter in support of his request for a sentence below the advisory guideline sentencing range, by variance or departure.

The advisory guideline range determined under U.S.S.G. §§ 2A3.1 and 4B1.5 results in an imprisonment range that exceeds a sentence that is "sufficient, but not greater than necessary" to accomplish the purposes of sentencing under 18 U.S.C. § 3553(a). In support thereof, Kemp shows unto the Court the following:

1. Kemp has served in the U.S. Army, with honor and distinction, since August 1991.

2. As a non-commissioned officer (NCO), Kemp has had a distinguished and decorated 26-year military career (PSR at pg. 14, ¶¶60, 62).

3, Over the course of his service, Kemp has been deployed overseas on 6 tours of duty, including to Haiti (1994-95/4 mos.) and to South Korea (2004-05/8 mos.), and to active war zones in Iraq, in support of **Operation Iraqi Freedom** (2006/9 mos.) and **Operation Enduring Freedom** in Afghanistan (2007-09/13 mos. and 2013-14/9 mos.).

Over the past 26 years, Kemp has received numerous military awards, decorations and achievements, including, notably:

- in June 1992, Kemp was promoted to the rank of Private 1st Class, and, in December 1992, to the rank of Specialist. In June 1994, Kemp was promoted to the rank of Sergeant, and in September 1999, to the rank of Staff Sergeant;

- in December 1995, in one his first NCO Evaluation reports, then-Sgt. Kemp served as flight operations sergeant for Airborne Reconnaissance Low intelligence collection system. He was named the "Battalion NCO of the Quarter," "accomplished every task in detail and to the highest standards" and should be "promoted ahead of his peers";

- in 1995, Sgt. Kemp was a member of the Military Intelligence Battalion (Low Intensity) that received the Army Superior Unit Award in service of **Operation Uphold Democracy in Haiti** for the period of September 1994 to April 1995;

- in March 1996. Sgt. Kemp was a member of the Joint Special Operations Task Force 188 that received the Joint Meritorious Unit Award for his service in **Operation Uphold Democracy in Haiti** from October 1993 to March 1995;

- in May 1998, in a school academic evaluation report at Ft. Rucker, Alabama, Kemp was noted to be "enthusiastic and capable non commissioned officer," and that he demonstrated excellent communication skills and performed well as a leader;

- in March 2001, then-Staff Sergeant Kemp successfully completed his Drill Sergeant course and training at Ft. Jackson, S.C.;

- by April 2004, then-Drill Sgt. Kemp was noted in his NCO Evaluation Report to be "one of the most respected NCOs in the battalion," and had unlimited potential for service at the highest ranks of the Army." In April 2006, as a member of Headquarters Company, 120th Adjunct General Battalion, Kemp received "The Meritorious Service Medal" for "exceptionally meritorious service as a drill sergeant."

- in April 2005, in his first Officer Evaluation Report after achieving the rank of Warrant Officer 1, Kemp, who served as Battalion Mobility Officer, was noted to be "the top mobility warrant [officer] in the Battalion" and one of the battalion's "best officers overall." CW1 Kemp was recommended to be promoted to CWO2 and to be sent to the Warrant Officer advanced course;

- in May 2006, Kemp was promoted to the rank of Chief Warrant Officer 2.

- from January through October 2006, CW2 Kemp was deployed overseas as the mobility officer of a 3,200-member combat aviation brigade within the 101st Airborne Division, for his first tour of duty in support of **Operation Iraqi Freedom in Iraq**;

- in January 2010, Kemp was promoted to the rank of Chief Warrant Officer 3.

- in January 2010, CW3 Kemp was deployed overseas as the Senior Mobility Officer in support of **U.S. Forces in South Korea**. CW3 Kemp was noted in his Officer Evaluation Report to be "an outstanding leader, role model, coach and mentor" and was recommended to be promoted to CW4. CWO3 Kemp evaluated as a "skillful professional, an expert in his field; his work ethic, exceptional leadership as well as his technical and tactical acumen provide a capability that far surpasses his grade";

- in May 2012, 101st Sustainment Brigade Commander Michael P. Peterman noted in Kemp's officer evaluation in support of **Operation Enduring Freedom**, that "Danny is the most tactically and technically proficient warrant officer that I have worked with during my 19 years in the Army" and Kemp "is among the top 5% of all the warrant officers I have ever served with" and had "all the skills and leadership traits of a CW5";

- in August 2012, CW3 Kemp completed the Warrant Officer Staff course and training, and was highly recommended for the Warrant Officer Senior Staff course;

- in May 2013, CW3 Kemp was deployed overseas in support of **Operation Enduring Freedom**, for his second tour of duty in Afghanistan through February 2014.

- in May 2013, 101st Sustainment Brigade Commander Charles R. Hamilton noted in Kemp's officer evaluation report in support of **Operation Enduring Freedom in Afghanistan**, that "Kemp is my #1 of the 16 CW3s I have ever senior rated. Superior performance by a dedicated professional and exceptional warrant officer. A future Corps Mobility Warrant Officer. He is an absolute must select for BZ to CW4/CW5; his potential is unlimited. CW3 Kemp has all skills and leadership traits of a CW5."

CW3 Kemp would later be awarded a "Non-Article 5 NATO Medal," for his service from May 2013 through February 2014 with NATO in operations of the International Security Assistance Force in support of **Operation Enduring Freedom in Afghanistan**;''

- in December 2013, CW3 Kemp was awarded **the Bronze Star Medal** for "exceptionally meritorious service while serving, in his final overseas deployment, as the Brigade Mobility Warrant Officer in support of **Operation Enduring Freedom**;

- in January 2014, **after having been forward deployed to Bagram Airfield, Afghanistan**, Brigade Commander Hamilton noted in Kemp's officer evaluation report: **Superior performance in combat**. CW3 Kemp is #2 of 45 Warrant Officers in the Brigade and ranks in the top 5% of all Warrant Officers I have served with in my 30 year career. Danny is a must select for promotion to CW4." He also noted in the evaluation that Kemp "was able to complete 18 hours of college level credits toward his Bachelors Degree";

- on May 9, 2014, Kemp received his Bachelor of Science from Austin Peay State University, Clarksville, TN;

- in October 2014, Kemp was promoted to the rank of Chief Warrant Officer 4.

- in June 2015, CW4 Kemp was noted in his officer evaluation report to be the "first choice" of brigade warrant officers for "below the zone promotion to CW5 and selection for the Warrant Officer Senior Staff ahead of his peers" and that this "incredible officer" should be assigned to "our most complex multi-star strategic headquarters where he will serve with absolute distinction"; and

- in May 2016, in his last officer evaluation report, CW4 Kemp was noted for his "stellar performance by an outstanding officer and leader" in orchestrating "the deployment of the Brigade Headquarters **to Qatar in support operations in CENTCOM AOR**" and instrumental in "the **successful deployment and re-deployment of B/5-5 ADA into theater in support of operations in Iraq.**"

## GUIDELINE CALCULATIONS

The Presentence Report in this matter calculates the advisory guideline sentencing range as being 360 mos. to life, based on a total offense level of 42 and a criminal history category of I (PSR at pg. 17, 81). Kemp has raised two objections: (1) to the calculation of Kemp's pre-trial confinement, and (2) to the two level enhancement if the victim of the offense had attained the age of 12 years but had not attained the age of 16 years, under USSG §2A3.1(b)(2)(B).

The calculation of Kemp's pretrial detention, and the time that should be counted against the sentence imposed by this Court, does not impact the advisory guideline sentencing range. Counsel will briefly address this issue at sentencing.

With respect to the 2-level enhancement, Kemp and the Government negotiated and included as stipulations in the plea agreement the <u>exact same</u> base offense level and <u>every</u> specific offense characteristic, as well as <u>every</u> other enhancement, as Probation in calculating the advisory guideline range (PSR at pg. 3, ¶8 and pg. 16, ¶¶67-78), save for the 2-level increase if the victim of the offense was between the ages of 12 and 16 (PSR at pg. 16, ¶69). In fact, the parties included in their sentencing enhancements stipulations that even Probation did not initially apply in calculating Kemp's advisory guideline range.

The reason the parties did not enter into a stipulation concerning this 2-level enhancement is because both parties were aware and believed, at the time, that Ch.K. had disclosed during a child forensic interview that Ch.K. was 16 years old during the abuse, and, specifically, that Ch.K. was not between 12 and 15 years old.

In fact, the parties understanding of Ch.K.'s age during the abuse, and the source of that understanding, gave rise to the parties' agreement to also stipulate to the Chapter 4, 5-level enhancement under USSG §4B1.5(b)(1), on the basis that Ch.K. had also not yet reached the age of 18. *See* App. Note 1.

Even the government initially objected to the enhancement and to the finding that Ch.K. was at least 16 during the abuse (D.E. 77), based on the parties understanding at the time of the negotiation of the plea agreement, and the fact of the source of that understanding. *See* Position of the Government Regarding Presentence Report for Daniel N. Kemp, Sr., at pg. 7 (Objection to paragraph 58) and at pg. 5 ("Ch.K. was sixteen (16) years old during the sexual abuse, not between twelve (12) and fifteen (15) years old") (D.E. 77).

**CONCLUSION**

Kemp understands the harm that he has caused so many people that he has loved and who have loved him, in his family and in his military family. He will never forgive himself. But the U.S. Army and the United States are also better off for having had a 22-year old Private Kemp and 47-year old CW4 Kemp in their service. Kemp asks the sentence reflect his contributions to the United States to an appropriate degree.

In consideration of the 3553(a) sentencing factors, including the nature and circumstances of the offense, Kemp's history and characteristics, his age, the length of his service and the sacrifices he has made to the Army and to the United States, Kemp submits that a sentence of 180 months, as a departure or variant sentence, would be sufficient, but not greater than necessary to achieve the purposes of sentencing.

Such a sentence would be harsh and punitive, but would promote respect for the law and protect the public from further crimes by Kemp while also recognizing the sacrifices he has made in service to his country for over half of his life.

Respectfully submitted, this the 1st day of July, 2020.

SCOTT L. WILKINSON & ASSOCIATES, P.C.

/s/ Scott L. Wilkinson
N.C. State Bar No. 14431
CJA Appointed Counsel for Daniel N. Kemp
2802 Anderson Drive, Suite 101
Raleigh, NC 27608-1506
Telephone: (919) 614-4944

CERTIFICATE OF SERVICE

     I hereby certify that I have, on this the 1st day of July, 2020, electronically filed the foregoing Sentencing Memorandum with the Clerk of Court using the CM/ECF system which will send notification of such filing to the United States:

Charity L. Wilson
Assistant United States Attorney

                                              /s/ Scott L. Wilkinson
                                              CJA Appointed Counsel for Daniel N. Kemp

6
Case 5:19-cr-00149-BO   Document 108   Filed 07/01/20   Page 6 of 6